**NEW YORK CENTRAL RAILROAD COMPANY, Plaintiff, v. A. SCHULMAN, INC., Defendant.**

Common Pleas Court, Summit County.

No. 171178.   Decided August 29, 1950.

Loomis, Caris & Jones, Ravenna, K. H. Lundmark, Cleveland, Clarence Foust, Akron, for plaintiff.
Harris, Sacks & Subrin, Sam Goldman, Akron, for defendant.

## OPINION

By WATTERS, J.

This matter was tried to the court upon written stipulations and agreed statements of fact filed herein on June 1, 1950. No testimony or other evidence was presented. Thereafter counsel for the parties submitted their argument on the facts and law by written briefs which the court has studied with great interest, together with the authorities cited.

The court will not herein reproduce the stipulation and agreed statement of fact filed herein, but refers to same and makes it a part hereof as though rewritten herein.

The sole issue, as the court views it, is whether the articles shipped via plaintiff carrier were "scrap rubber" or "gas masks" for tariff purposes.

It is admitted by both sides that the Interstate Commerce Commission has frequently held that the classification of a commodity for rate purposes cannot depend upon the use to which it is ultimately put. This is on the theory that commodities are presumed to be used and useful for the very purpose for which they are made, and that there is no law preventing or prohibiting the owner from using it for its normal use.

In other words if the articles here shipped had a recognized commercial value as gas masks, then they should be so

classified for tariff purposes, even though they were not subsequently put to that use.

The question then presents itself thus: Did the commodity shipped at the time tendered for shipment have a recognized commercial value as gas masks.

The government sold the commodity for a small fraction of the government's purchase price as gas masks, and with the understanding that the title to the canisters, an integral part of the gas mask, was retained by the government. The government required that the canisters be returned to it after the rubber was scrapped or salvaged. The purchaser warranted that it would not sell the rubber at greater than the O. P. A. ceiling price as scrap.

Ordinarily the canisters were removed before shipment, but here a bond was put up guaranteeing removal thereof upon receipt at destination.

It was the strict War Department policy not to permit these articles to get out into civilian life as gas masks, and the purchaser gave bond to guarantee their non-use as gas masks. In this court's opinion, that directive or prohibition was and is the law of the land, and had to be complied with, and forms a part of the shipping contract.

The government order was complied with, the canisters were removed, and the rubber salvaged as scrap.

Had the articles been lost, destroyed or damaged in transit, in the court's opinion no claim could have been urged for their value as gas masks.

In the court's opinion the burden is upon the carrier to establish that these articles fall under the classification of gas masks by a preponderance of the evidence, and that plaintiff has failed to do so.

Also in Ohio where there is a doubt as to the proper classification of a commodity for tariff purposes, that doubt is resolved in favor of the shipper and against the carrier.

See **Saalfield Publishing Co. v. Public Utilities Commission of Ohio, 149 Oh St, 113, syllabi (2) and (3).**

See also Nashville etc. Ry. Co. et al v. Bremen, 75 Fed. Supp., 539, and DeRamus v. Mengel Co., 74 Fed. Supp., 425.

The court feels that the only true classification is that of scrap rubber, and that to put these commodities under the classification of gas masks, in view of all the evidence and the law, would be a strained and arbitrary interpretation, and unfair.

If it is necessary to carry into effect this judgment, the court will also order reformation of the various bills of lading to read "scrap rubber."

Judgment is rendered for the defendant with exceptions to plaintiff.